(Decided June 19th, 1862.)

---

## JOHN D. KERR *vs.* THE UNION BANK OF MARYLAND.

In a case of a bill for an interpleader, if at the time the bill was filed there was some plausible apprehension that the complainant would be involved

Kerr *vs.* Union Bank.

in a two-fold responsibility, yet if, before final decree, that cause of ap·prehension was removed, the bill must be dismissed.

Where, in an action at law by one of the defendants against the complainant in such a bill, the other defendant appeared as counsel for the complain·ant, the questions settled by the verdict and judgment therein, are conclusive as against the complainant, unless, and until, reversed on appeal.

The petition of a complainant, seeking relief in equity from conflicting claims, by a bill of interpleader, must be one of *continuous impartiality.*

APPEAL from the Equity side of the Superior Court of Baltimore City.

A bill for an *interpleader,* was filed by the appellee against the appellant and John Glenn, in the court of chancery, August 4th, 1849, and asking for an injunction restraining the defendant, Kerr, from prosecuting his action of *trover* to recover damages for the conversion of certain promissory notes held by the bank, and also to restrain the defendant, Glenn, as permanent trustee of Edward M. Kerr, from prosecuting or commencing any proceeding against the bank, in reference to said notes. The grounds upon which the interpleader is asked, and the facts of the case are sufficiently stated in the opinion of this court. The appellant answered the bill, but Glenn never answered, and no steps were taken as against him. The proceedings were transmitted to the Superior court of Baltimore city on the 28th of April 1855, and on the 21st of April 1857, the case was set down for final hearing on bill and answer, and an agreement; by which it was agreed—

1st. That the decisions in the cases of *Kerr vs. Potter,* 6 *Gill,* 404; *Glenn vs. Gill,* 2 *Md. Rep.,* 1; and *Union Bank vs. Kerr,* 7 *Md. Rep.,* 88; may be read from the printed reports, and the evidence therein contained, and the points therein decided, as if the evidence had been duly taken and made part of the proceedings in this case.

2nd. It is admitted, that the attachment issued by Samson Tams, mentioned in the bill, was finally disposed of before the bill was filed by a verdict and judgment against Tams, and that in that attachment Tams did not claim as against the

complainant, or the defendant, John D. Kerr, the money or notes mentioned in the bill.

The court (LEE, J.) passed a decree on final hearing, perpetuating the injunction which had been granted against the defendant, John D. Kerr, and from this decree he appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Wm. Schley*, for the appellant, argued:

1st. The decree, making the injunction perpetual, can only be supported, provided the case, on final hearing was such, as to entitle the complainant to a decree of interpleader. The injunction is necessarily dependent on the right to relief by interpleader, inasmuch as the complainant disclaims any right to the bills, notes and money, and only asks protection from the conflicting demands of the defendants.

2nd. And although, where the case is ripe for decision, as between the defendants themselves, the court may dispose of the case by final decree, without directing an issue or reference, or interpleader, and may properly bring the case to hearing, as to one defendant, where the other has not answered, yet, in either aspect, this decree can be sustained only on the hypothesis, that the claim of the appellant is wholly unfounded. By enjoining the appellant, perpetually, from proceeding at law, without reservation, by the decree, of *any rights* or equities on his behalf, in relation to the property, he is effectually excluded from redress or relief in any way whatever.

3rd. The case of the complainant, as presented at final hearing, did not establish a title to the relief of a decree of interpleader. The material facts are:

1st. On presentation, by the appellant, of his assignment at the bank, its cashier recognized it, and endorsed thereon the extent of the bank's claim. This created a privity between the bank and the appellant. Thenceforth the bank held the collaterals for the use, and as the property, of the appellant,

subject only to the paramount right of the bank to payment, in priority, of its own lien.

2nd. The asserted title of Gill was ended before this bill was filed.

3rd. The claim of Glenn was made in his capacity of permanent trustee of E. M. Kerr, and was based on the alleged invalidity of the assignment to the appellant, under the insolvent laws. His was a dry legal claim, based not on contract but on alleged fraud.

4th. The bank in the action of *assumpsit,* which had been tried before this bill was filed, raised the same and all the questions which it now asks the court, to compel the appellant to litigate anew with the other defendant. As between the bank and the appellant, those questions were conclusively settled by the verdict and judgment at law, *unless* and *until* reversed on appeal. At the time this bill was filed, that judgment was in full force, and at the time of final hearing the same had been affirmed on appeal. The validity of the assignment was established in every particular, and the bank is estopped as to the questions settled between the parties to that case.

5th. The other defendant had defended the action of *as sumpsit,* as *his own.* Having elected the *forum* of trial, and defended there the claim of the appellant, and having, moreover, carried the case to the Court of Appeals, and failed in the resistance of the appellant's title under the assignment, the verdict and judgment in favor of the appellant, should be held, in equity, as equally conclusive against him, even if he were seeking to draw again in question the title of the appellant. The bill, however, does not show any renewed claim by him.

6th. The action of *trover* was brought April 28th, 1547. Glenn was appointed trustee in 1847. The complainant had been fully paid as early as December 1846. This bill was not filed until August 4th, 1849, nearly two years after Glenn's demand. In the mean time the complainant resisted, at law, the claim of the appellant, and cooperated with the other de-

fendant in attempts to defeat .the action. The course of the complainant was marked, not merely by unreasonable delay, amounting to gross *laches*, but was partizan in its character and collusive. If there was no collusion in *filing* the bill, there was previous *collusion*, discreditable to the complainant, and debarring it from any claim to equitable relief, even if the participation of the other defendant in the defence of that case, would entitle him to claim as against the complainant.

In support of the above positions, see *Cooper's Eq. Pl.*, 456; 2 *Story's Eq.*, secs. 817 to 821; *Wat. Eden on Inj.*, 405, and *notes;* 3 *Daniell's Ch. Pr.*, 1754, 1765; 7 *Sim.*, 391, *Crawshay vs. Thornton*, and same case in 2 *Mylne & Craig*, 1; 4 *Paige*, 384, *Clute's case;* 2 *Paige*, 570, *City Bank vs. Bangs;* 11 *Sim.* 24, *Bignold vs. Audland;* 5 *Sim.*, 19, *Mason vs. Hamilton;* 2 *Smith's Lead. Cases*, 443; 3 *East*, 346, *Outram vs. Morewood;* 4 *G. & J.*, 345, *Shafer vs. Stonebraker;* 12 *Md. Rep.*, 550, *Beall vs. Brown;* 8 *Paige*, 339, *Shaw vs. Coster;* 2 *Paige*, 199, *Bedell vs. Hoffman*.

*G. L. Dulany* and *Reverdy Johnson*, for the appellee—argued, that under the circumstances of this case, set forth in the bill, the appellee was entitled to its bill of interpleader, and that the court below committed no error in perpetuating the injunction which had been granted against the appellant, and in support of their position they cited *Mitford's Ch. Pl.*, 58, 59, 164; 2 *Story's Eq.*, secs. 805 to 817; *Story's Eq. Pl.*, secs. 291, 292; 3 *Daniell's Ch. Pr.*, 1755; *Cooper's Ch. Pl.*, 47, 49; 2 *Md. Ch. Dec.*, 466, *Union Bank vs. Kerr and Glenn*.

GOLDSBOROUGH, J., delivered the opinion of this court.

The appeal in this case was taken from a decree of the Superior court of Baltimore city, sitting in equity, by which the appellant was perpetually enjoined from prosecuting an action of *trover*, instituted in Baltimore county court on the 28th day of April 1847, against the appellee, to recover damages

for the conversion of certain promissory notes claimed by the appellant under an assignment from one Edward M. Kerr, and which being demanded, the appellee refused to deliver up.

The bill of complaint of the appellee alleges as an excuse for its refusal, that though it had no claim to the notes in question at the time of the demand of the appellant, yet, before then, it had received notice from George M. Gill, Esq., attorney for a certain Moses Potter, that he claimed these notes as receiver, appointed to settle up the affairs of the partnership of Edward M. Kerr & Co., and that they formed part of the partnership effects.

The appellee alleges as a further excuse, that subsequent to the demand of the appellant, "an attachment upon judgment in a certain action in which Sampson Tams was plaintiff, and Edward M. Kerr was defendant, issued out of the Circuit court of the United States for the district of Maryland, and was laid in the hands of your orators and of George M. Gill and others, as garnishees of Edward M. Kerr, which proceeding is still pending." The appellee alleges as a still further excuse for the noncompliance with the demand of the appellant, that Edward M. Kerr, his assignor, applied for the benefit of the insolvent laws of Maryland, on the 4th day of May 1847, and John Glenn, Esq., was appointed his permanent trustee, and claimed these notes of the appellee, in his capacity of trustee of said Kerr, on the ground, that the assignment of Edward M. Kerr, as above, to John D. Kerr, was void under the insolvent laws of Maryland, as an undue preference by a debtor in failing circumstances and that the notes so assigned were partnership property.

This case is in some measure divested of its complicated character as set forth in the appellee's bill, by the admission of the parties, that "the attachment of Sampson Tams, in said bill named, was finally disposed of before the filing of this bill, by a verdict and judgment against said Tams; and that in said attachment, said Tams did not claim as against the complainant, or as against the defendant, John D. Kerr, the money or

notes mentioned in the bill, as claimed by the said defendant, John D. Kerr;" also by the fact, that the claim of George M. Gill, was decided adversely to him by the Court of Appeals, (2 *Md. Rep.*, 1,) before the filing of the bill in this case, thus reducing the parties claimant, to the appellant, and John Glenn, trustee of Edward M. Kerr.

It is for us to determine, from the allegations in the complainant's bill, the defendant's answer, and from the conduct of the appellee, whether it has such a standing in a court of equity, as to entitle it to require the contestants to interplead, and settle their respective claims to the notes involved in the action of *trover*, and to a perpetual injunction against the appellant, as granted by the decree from which this appeal is taken.

This bill was originally filed in the high court of chancery, on the 4th day of August 1849, and subsequently removed to the Superior court of Baltimore city. And though John Glenn, Esq., was made defendant, as well as the appellant, no subsequent process was sought by the appellee to compel said Glenn to appear and defend his rights, and he was permitted to disappear altogether from the cause, although a period of some four years intervened between the filing of the bill and his death. In the above interval, Mr. Glenn tacitly permitted the present contesting parties to litigate a question, in which, in his representative capacity, he was interested:—in fact he was in part the cause of the bill being filed, by setting up a claim to the notes in question, leaving the appellee, as that party thought, no alternative but to seek the aid of a court of equity, to compel the respective claimants to interplead. We do not deem it inequitable to conclude, that Mr. Glenn, by this course of conduct, regarded his rights as substantially settled by the decision of the action of *assumpsit*, to which we shall hereafter refer.

Though there may have been some plausible apprehension entertained by the appellee, at the time the bill in this case was filed, that it would be involved in a two-fold responsibili-

ty, yet before the time of the final decree, the cause of that apprehension, in our opinion, was substantially removed, and the equity, on which it relied, no longer existed.

At the time of the institution of the action of *trover*, the appellant brought an action of *assumpsit*, to recover the sum of $574.18, which the appellee admitted to be in its hands, and to which it had no claim.

The appellant claimed this fund under the very same assignment from Edward M. Kerr, which created the right of the appellant to claim the notes involved in this controversy. In the prosecution of the action of *assumpsit*, the appellee admits in its bill, "that John Glenn, Esq., trustee of Edward M. Kerr, as aforesaid, appeared for your orators and defended the case as his own, and that he has since taken an appeal to the Court of Appeals." This relation between Mr. Glenn and the appellee, seriously affects the idea, that the appellee was desirous to maintain the position of an impartial stake-holder; on the contrary, we are compelled to say, that it exhibits evidence of a combination, which, in a case like this, a court of equity cannot sanction in view of the prayer of the bill.

At the trial of the action of *assumpsit* in Baltimore county court, in which the appellant was plaintiff and the appellee was defendant, every legal objection to the right of the plaintiff to recover was made, which could be made by the appellee to the action of *trover*, against which it now seeks relief; the *bona fides* of the assignment from Edward M. Kerr, to the appellee; that it was voluntary and without consideration; that the assignment was void, being made by Edward M. Kerr, with a view of becoming an insolvent debtor; that it gave to the assignee an undue and improper preference, and was a fraud on the insolvent laws, and for that reason was void. See the exceptions in the case of the *Union Bank vs. Kerr*, 7 *Md. Rep.*, 88. As between the appellee and appellant, these questions were conclusively settled by the verdict and judgment, unless, and until, reversed on appeal. See 2 *Smith's Lead. Cases*, 590; 4 *Md. Rep.*, 165. At the time the bill in

this case was filed, that judgment was in full force, and before the final hearing, the same on appeal had been affirmed; see last case cited above. Reverting to the relation of John Glenn to this case, and considering the total neglect of the appellee to take any process against him, either by attachment, for want of appearance or answer, when, if the appellee had done so, and on failure of Glenn to appear and answer, it might have taken the bill *pro confesso* as to Glenn, and that would have been a tacit confession by him, that he had abandoned his claim upon the notes in question, and the complainant would have been entitled to a perpetual injunction against Glenn, and not against the appellant. See 2 *Paige*, 209.

We cannot justify this neglect of the appellee, nor permit it to operate to the prejudice of the rights of the appellant. This course of conduct on the part of the appellees, taken in connection with the circumstances of the case, so far affects the equity of the bill, that, in our opinion, the complaint is divested of all merit; more especially as, by the perpetuation of the injunction against the appellant, he is effectually excluded from redress or relief in any way whatever. The position of a complainant, seeking relief in equity from conflicting claims by bill of interpleader, should be one of continuous impartiality.

This position the appellee has wholly abandoned. If the facts and circumstances which have arisen since the filing of the bill, and to which we have adverted, could have been presented to the consideration of the Superior court by a supplemental answer, to be weighed at the final hearing, then the appellant is entitled to the benefit of them, under the agreement of the parties.

In view of the whole case, the decree of the Superior court from which this appeal is taken, was erroneous, and must be reversed.

*Decree reversed and bill dismissed,*
*with costs to appellant.*

(Decided June 19th, 1862.)